```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
BARRY C. HONIG, and GRQ
CONSULTANTS, INC.,
                                        MEMORANDUM AND ORDER
                Plaintiffs,
                                          20 Civ. 2808 (NRB)
          - against -

RIOT BLOCKCHAIN, INC.,

                Defendant.

-------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Barry C. Honig ("Honig") and GRQ Consultants, Inc. (together with Honig, "plaintiffs") bring this action against defendant Riot Blockchain, Inc. ("Riot"), and asserting a claim for breach of contract and seeking declaratory relief. Plaintiffs allege that Riot violated its contractual obligations by refusing to indemnify plaintiffs for the costs of defending against certain legal proceedings brought by third parties against Honig. Before the Court is Riot's motion to dismiss plaintiffs' amended complaint. For the following reasons, Riot's motion is granted.

## BACKGROUND

In their amended complaint (ECF No. 18) ("Am. Compl."), plaintiffs allege that Riot entered into Security Purchase Agreements (the "SPAs") with Honig in March of 2017 which provided terms under which Honig would purchase convertible promissory

notes and common stock purchase warrants from Riot.  Am. Compl. ¶ 2.  The SPAs, which are governed by New York law, each contain an indemnification clause at Section 4.8 which reads, in relevant part:

> [Riot] will indemnify and hold [Honig] . . . harmless from any and all losses, liabilities, obligations, claims, contingencies, damages, costs and expenses, including all judgements, amounts paid in settlements . . . court costs and reasonable attorneys' fees . . . as a result of or relating to . . . any action instituted against [Honig] in any capacity, or any of them or their respective Affiliates, by any stockholder of [Riot] who is not an Affiliate of [Honig], with respect to any of the transactions contemplated by the Transaction Documents (<u>unless</u> such action is based upon . . . any violations by [Honig] of Securities Laws or any conduct by [Honig] which constitutes fraud, gross negligence, willful misconduct or malfeasance by [Honig]).  If any action shall be brought against [Honig] in respect of which indemnity may be sought pursuant to this Agreement, [Honig] shall promptly notify [Riot] in writing, and [Riot] shall have the right to assume the defense thereof with counsel of its own choosing reasonably acceptable to [Honig] [emphasis added].

In February of 2018, Creighton Takata commenced a class action against Riot and Honig in the U.S. District Court for the District of New Jersey, alleging that Honig's purchase of securities in transactions contemplated by the SPAs was part of a "fraudulent scheme consisting of misrepresentations, omissions, and actions that deceived the investing public in violation of securities laws."  Am. Compl. ¶ 21.  Specifically, the operative complaint alleges that Honig violated Section 10(b) of the Securities Exchange Act and Rule 10-b5.  ECF No. 18-3.

-2-

Additionally, Honig is a named defendant in five separate shareholder derivative actions, each of which is brought by a Riot shareholder. Am Compl. ¶ 22. Those actions allege that Riot, its directors and officers, and Honig violated the securities laws, and that Honig acquired stock from Riot to gain "control" over the company in order to engage in violations of the securities laws. Id. ¶ 23. Plaintiffs allege that, to date, they have incurred over $350,000 in legal fees in connection with defending Honig in the aforementioned legal proceedings (the "Legal Proceedings").

On February 14, 2020, counsel for Honig sent Riot a letter requesting that Riot indemnify Honig for the expenses, including legal fees, incurred by Honig in connection with the Legal Proceedings. Id. ¶ 30; ECF No. 18-9. On March 6, 2020 counsel for Riot denied Honig's indemnification request. ECF No. 18-10. Plaintiffs filed their complaint on April 3, 2020 (ECF No. 1) and an amended complaint on May 11, 2020. ECF No. 18. Riot filed a pre-motion letter seeking leave to file a motion to dismiss. ECF No. 37. Plaintiffs responded to Riot's letter (ECF No. 38), and after reviewing the letters and the amended complaint, this Court granted Riot leave to file its contemplated motion, see ECF No. 39, which it did on July 9, 2020. ECF No. 40.

**DISCUSSION**

**1. Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether a claim has facial plausibility, "we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

To succeed on a claim for breach of contract, a plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (internal citation and quotation marks omitted). A court should construe a contract as a matter of law only if the contract

is unambiguous on its face.  See Metro. Life Ins. Co. v. RJR Nabisco Inc., 906 F.2d 884, 889 (2d Cir. 1990). "A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 69 (2d Cir. 2014).  "If a contract is unambiguous, courts are required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 573 (2d Cir. 1993) (internal citations omitted).  "[L]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in litigation." Buffalo Color Corp. v. Alliedsignal, Inc., 139 F. Supp. 2d 409, 420 (W.D.N.Y. 2001) (internal citations omitted).  Here, neither party argues that the terms of Section 4.8 are ambiguous.  The Court agrees that because only one interpretation is reasonable on its face, no ambiguity exists, and the Court can construe the contract as a matter of law.

"Under New York law, '[t]he right to contractual indemnification depends upon the specific language of the contract. In the absence of a legal duty to indemnify, a contractual indemnification provision must be strictly construed

-5-

to avoid reading into it a duty which the parties did not intend to be assumed.'" In re Bridge Const. Servs. of Fla., Inc., 140 F. Supp. 3d 324, 331 (S.D.N.Y. 2015) (quoting Alfaro v. 65 W. 13th Acquisition, LLC, 74 A.D.3d 1255, 904 N.Y.S. 2d 205, 207 (2010)); see also Heimbach v. Metro. Transp. Auth., 75 N.Y.2d 387, 553 N.Y.S.2d 653, 553 N.E.2d 242, 246 (1990) (holding that contractual language must evince an "unmistakable intention" to indemnify before a court enforces such an obligation).

In ruling on a motion to dismiss, the Court may consider "documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." DKR Capital, Inc. v. AIG Int'l W. Broadway Fund, Ltd., No. 03-cv-1568 (JGK), 2003 WL 22283836, at *1 (S.D.N.Y. Oct. 2, 2003) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

**2. The Parties' Dispute**

We begin with a brief recitation of facts which are not in dispute. Neither party contests that the Legal Proceedings were initiated by stockholders of Riot who were unaffiliated with Honig, that the Legal Proceedings are "with respect to any of the transactions contemplated by the Transaction Documents," nor that

the Legal Proceedings involve claims of Honig's violations of the Securities Laws (as defined in the SPAs) and fraudulent conduct.

Only a single issue of contract interpretation is currently before the Court. Riot argues that plaintiffs' claims for breach fail because Riot has no obligation to indemnify plaintiffs where the SPAs specifically exclude from indemnification costs in connection with actions "based upon . . . any violations by [Honig] of Securities Laws or any conduct by [Honig] which constitutes fraud, gross negligence, willful misconduct or malfeasance by [Honig]." Thus, according to Riot, this clause excludes indemnification for costs arising from defending actions "based upon *alleged* securities violations and fraudulent acts." ECF No. 41 at 8-9 (emphasis added). Because the Legal Proceedings indisputably involve actions which allege violations of the securities law and fraudulent conduct, Riot contends it has no obligation to indemnify.

Plaintiffs disagree. They argue that "[b]y its terms, the carveout in [the indemnification clause] extends only to *actual* violations of the Securities Laws and conduct determined to constitute fraud." ECF No. 46 at 12 (emphasis added). Because the Legal Proceedings are ongoing and no determination has been made either way as to Honig's wrongdoing, plaintiffs contend that

-7-

they are entitled to advancement of legal costs.

There is an obvious relation between when Riot's obligation to indemnify is determined and whether alleged or actual misconduct defines the obligation to indemnify.  If the agreement provided that Riot's obligation to indemnify would be determined at the outset of an action lodged against Honig, then the obligation must be predicated on the allegations of that action.  If instead, the agreement contemplated a later timeframe for that determination, Riot's obligation to indemnify could be predicated on the underlying merits of those allegations.

Reading Section 4.8 in its entirety, it is clear that the agreement contemplates that Riot's obligation to indemnify would be ascertained at the outset of any action against Honig.  It follows that the allegations of the underlying action – not the merits of the action – govern Riot's obligations.  The first sentence of Section 4.8 – before the parenthetical exception – establishes when and for what Honig is entitled to indemnification from Riot.  Riot "will indemnify and hold [Honig] . . . harmless from any and all losses . . . that [Honig] may suffer or incur as a result of or relating to . . . *any action instituted* against [Honig] . . . ."  ECF 18-1 ("SPA"), at § 4.8 (emphasis added).  Applying this provision, Riot is obligated to indemnify Honig from

the point at which a third party institutes or commences an action against Honig.  See Institute, Black's Law Dictionary (10th ed.) ("to begin or start; commence.").  The clause makes no mention of reevaluating that obligation after a finding on the merits of the action, and indeed such a finding need not ever occur.[1]  It then must be the *allegations* against Honig which trigger the obligation to indemnify, as nothing more exists at the commencement of an action.

The parenthetical exception which concludes the first sentence circumscribes Riot's obligation to indemnify Honig when "such action is based upon . . . any violations by [Honig] of Securities Laws or any conduct by [Honig] which constitutes fraud . . . ."  SPA § 4.8.  "[S]uch action" must be read in parallel with "any action instituted," and likewise it refers to allegations of violations of the securities laws and fraudulent conduct.[2]

---

[1]   For instance, Section 4.8 requires indemnification for "amounts paid in settlements."  That requirement would make little sense if Riot's obligation to indemnify Honig turned on a determination of the merits of the underlying action.

[2]   The case which plaintiffs principally use to argue that a determination of actual violation of the securities laws or fraudulent conduct is necessary to terminate the obligation to indemnify, Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co., 410 F. Supp. 3d 662 (S.D.N.Y. 2019), analyzes a clause which provides that defendant need not indemnify plaintiff where expenses "[arose] from [plaintiff's] negligence or intentional misconduct."  Id. at 690.  This language is wholly distinguishable from the language in SPA § 4.8 as its focus is

If there were any ambiguity, which there is not, about when the obligation to indemnify is determined (and thus whether allegations or merits control), the next sentence of Section 4.8 confirms the Court's conclusion. It reads: "If any action shall be brought against [Honig] in respect of which indemnity may be sought pursuant to this Agreement, [Honig] shall promptly notify [Riot] in writing, and [Riot] shall have the right to assume the defense thereof with counsel of its own choosing reasonably acceptable to [Honig]." SPA § 4.8. The logic of Section 4.8's structure is apparent. The first sentence informs the parties as to whether indemnification is required. If and when those conditions are satisfied, Honig would notify Riot, which then has the option to assume the defense. The provision presupposes that the parties can determine, prior to that notice, whether an obligation to indemnify exists.

Finally, a reading of the SPAs which excludes indemnification for actions alleging securities laws violations and fraudulent conduct is wholly consistent with public policy. Under New York

---

on the plaintiff's underlying conduct rather than the nature of the lawsuit filed. Accord PIMCO Absolute Return Strategy 3D Offshore Fund Ltd. v. Wells Fargo Bank, Nat'l Ass'n N.A., No. 654743/2017 (N.Y. Sup. Ct., N.Y. Cty. Nov. 13, 2017), Dkt. No. 65 (interpreting carveout prohibiting indemnification for losses "incurred by reason of willful misconduct, bad faith or gross negligence").

law, "'[i]ndemnification agreements are unenforceable as violative of public policy only to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury.'" Gibbs-Alfano v. Burton, 281 F.3d 12, 21 (2d Cir. 2002) (quoting Austro v. Niagara Mohawk Power Corp., 66 N.Y.2d 674, 676 (1985)). It is true that "in the absence of a judgment of intentional conduct," courts will not hold an indemnification clause unenforceable. Id. However, in light of the prohibition against indemnifying intentional conduct, plaintiffs offer no compelling reason why we should imply a term that *requires* advancement when such intentional conduct is alleged.[3]

---

[3]   We note that the word "advancement" appears nowhere in the SPAs. See generally ECF No. 18-1. In suggesting that the SPAs require advancement, plaintiffs first point to the second-to-last sentence of Section 4.8 which provides that "[t]he indemnification required by this Section 4.8 shall be made by periodic payments of the amount thereof during the course of the investigation or defense, as and when bills are received or are incurred." But this language simply confirms that Riot's obligation to make indemnity payments begins at the initiation of the event precipitating indemnification and continues throughout the course of that event.
      Next, plaintiffs assert that SPA § 5.16 provides the mechanism by which plaintiffs would refund Riot in the event of an improper payment. Plaintiffs' reading is not supported by the text. That section indicates that "[t]o the extent that [Riot] makes a payment or payments to [Honig] . . . and such payment or payments . . . are subsequently invalidated, declared to be fraudulent or preferential, set aside, recovered from, disgorged by or are required to be refunded, repaid or otherwise restored to [Riot], a trustee, receiver or any other Person under any law . . . then to the extent of any such restoration the obligation or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made or such enforcement or set off had not occurred." This provision merely contemplates that in certain instances payments from

Moreover, if the parties intended to provide for advancement and repayment, there are no shortages of models. See, e.g., Rigas v. United States, No. 11-cv-6964 (KMW), 2020 WL 2521530, at *3 (S.D.N.Y. May 15, 2020) (quoting company bylaws requiring indemnified officer to "undertake to repay such amounts advanced to the extent that a court of competent jurisdiction ultimately determines that such a person is not entitled to indemnification"); Sec. & Exch. Comm'n v. Platinum Mgmt. (NY) LLC, No. 16-cv-6848 (BMC), 2018 WL 6172404, at *2 (E.D.N.Y. Nov. 25, 2018) (citing agreement requiring indemnified person to "'execute[] a written undertaking to repay' the advance if 'it is finally judicially determined that' he is not entitled to indemnification"); Gramercy Advisors, LLC v. Coe, Case No. 13-cv-9069 (VEC), 2014 WL 4197370, at *5 (S.D.N.Y. Aug. 25, 2014) (analyzing clause requiring plaintiff to "repay the amount advanced to the extent that it shall be determined ultimately that [they are] not entitled to be indemnified"); Abakan, Inc. v. Uptick Capital, LLC, 943 F. Supp. 2d 410, 413 (S.D.N.Y. 2013) (analyzing clause requiring indemnified party to "repay such advances if it shall ultimately

---

Riot to Honig may be invalidated but does not itself create a mechanism for invalidating or reimbursing an indemnity payment. As Riot points out, the provision appears primarily to relate to contingencies in the event of bankruptcy. See ECF No. 48, n. 6.

be determined that . . . such person was not entitled to be indemnified"). In the absence of an explicit requirement to advance payments, this Court will not imply one. To hold otherwise would be to suggest that Riot intended to have to expend its own funds, i.e. those of a public company beholden to shareholders, and – should a court later find Honig liable for fraud – seek recoupment of those funds from a would-be-established fraudster. Without an explicit agreement to that effect, the Court declines to read such a provision into the agreement.

## CONCLUSION

Because Riot had no duty to indemnify plaintiffs for expenses arising out of the Legal Proceedings, Count Two of the Amended Complaint for breach of contract is dismissed. Because Count One for declaratory relief is premised on the same argument for breach, it likewise must fail. See Kinsey v. Cendant Corp., 521 F. Supp. 2d 292, 306 (S.D.N.Y. 2007). Riot also requests that the Court award it reasonable attorneys' fees should it prevail on its motion. ECF No. 41 at 11. The SPAs provide "the prevailing party" in "an action or proceeding to enforce any provisions" of the SPAs "shall be reimbursed by the other party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such action or

proceeding." SPA § 5.9. As Riot has prevailed on its motion and consequently in this action, the request for reasonable attorneys' fees is appropriate and granted.[4] This Order resolves ECF Entry No. 40, and the Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated:   New York, New York
         November 20, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[4]   See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) ("[A] contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."). Plaintiffs offer no reason not to award attorneys' fees other than their assertion that defendant would not prevail on its motion. ECF No. 46 at 20. Moreover, it would be more economical and efficient if the parties could negotiate an agreed-upon amount of attorneys' fees. If such efforts are unsuccessful, Riot's motion must be supported by affidavit(s) and contemporaneous records.